**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JOSE ANTONIO ACOSTA DIAZ

      Plaintiff,

          v.                      CIVIL NO.: 21-1442 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**OPINION AND ORDER**

## I.    Procedural and Factual Background

Pending before the court is Mr. Jose Antonio Acosta Díaz's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 14. On June 12, 2017, Plaintiff filed an application for Social Security benefits alleging that he initially became unable to work due to disability on April 30, 2016 ("the onset date"). Tr. 21. Prior to the onset date, Plaintiff worked as a "Business Representative, Labor Union" and "Network Control Operator." Tr. 31. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. Tr. 23. Plaintiff's disability claim was denied on July 2, 2018 and upon subsequent reconsideration. Tr. 21

Thereafter, Plaintiff requested a hearing which was held on January 28, 2020 before an Administrative Law Judge ("the ALJ"). Tr. 21. On February 6, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 32. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1–5.

Plaintiff filed a complaint on September 15, 2021. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 14, 20.

## II.    Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

3

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable

physical or mental impairment" or severe combination of impairments. 20 C.F.R.

§ 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's

impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether

plaintiff's impairment or impairments prevent him from doing the type of work he has done in

the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence

in the case record to determine the most the individual can do in a work setting despite the

limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This

finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ

concludes that plaintiff's impairment or impairments do prevent him from performing his past

relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether

plaintiff's RFC, combined with his age, education, and work experience, allows him to perform

any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C. The ALJ's Decision**

In the case at hand, the ALJ found that Plaintiff met the insured status requirement of the

Social Security Act through December 31, 2021. Tr. 23. At step one of the sequential evaluation

process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset date of April 30, 2016 through the date last insured. Tr. 23. At step two, the ALJ determined that Plaintiff had the severe impairments of "diabetes mellitus, diabetic neuropathy, obstructive sleep apnea, bilateral carpal tunnel syndrome, bilateral shoulder calcific tendonitis, cervical spine degeneration and mild lumbar spine osteoarthritis." Tr. 23. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. Next, the ALJ determined that during the relevant period:

> [Plaintiff possessed] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can lift and carry 10 pounds occasionally and less than 10 pounds frequently. [Plaintiff] can sit for 6 hours and can stand and walk for 2 hours in an 8-hour workday. He can push and pull as much as . . . he can lift and carry. [Plaintiff] can frequently reach overhead to the left and to the right. For all other reaching, he can reach frequently to the left and to the right. He can handle items frequently with the left hand and with the right hand. [Plaintiff] has fingering and feeling limitations frequently with the left hand and with the right hand. He can occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch and crawl. He can never work at unprotected heights, never with moving mechanical parts. [Plaintiff] can never operate a motor vehicle.

Tr. 26–27. At step four, the ALJ determined that during the relevant period, Plaintiff was able to perform his past relevant work as a "Business Representative, Labor Union as generally performed" or his past relevant work as a "Network Control Operator as actually performed." Tr. 31. Because the ALJ determined that Plaintiff could perform his past relevant work, the ALJ concluded that Plaintiff was not disabled. Tr. 31.

## III.    Legal Analysis

Plaintiff objects to the ALJ's denial of disability benefits, arguing that the ALJ's RFC determination was not supported by substantial evidence. ECF No. 14 at 8. When formulating a claimant's RFC, the ALJ must base his determination on all relevant evidence, including a

claimant's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant bears the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### A.  The ALJ's Physical RFC Determination

Plaintiff argues that the ALJ did not rely on a medical opinion and therefore improperly interpreted raw medical data when he concluded that Plaintiff was limited to a sedentary exertional level. ECF No. 14 at 9, 12. Plaintiff contends that the ALJ "failed to give any evidentiary weight" to Plaintiff's treating physicians and found the state agency physician's opinions to be "less persuasive" when they concluded that Plaintiff was only limited to a "light work" exertional level. ECF No. 14 at 9; Tr. 30. Instead, the ALJ determined that Plaintiff suffered greater limitations than found in the "light work" exertional level and concluded that Plaintiff "is limited to the sedentary exertional level." Tr. 30. Plaintiff maintains that the ALJ so erred because no physician, whether a treating physician or one of the state agency physicians, assessed Plaintiff of being limited to a sedentary exertional level. ECF No. 14 at 9. Therefore, Plaintiff maintains that the ALJ could not have assigned the sedentary level without a physician's opinion and therefore committed error by interpreting raw medical data. ECF No. 14 at 9.

As a lay person, "an ALJ is not qualified to interpret raw data in a medical record in functional terms." See Pérez v. Sec'y of Health & Hum. Servs., 958 F.2d 445, 446 (1st Cir. 1991). "[T]he ALJ must measure the claimant's capabilities and 'to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" See Manso-Pizarro, 76 F.3d at

17–18 (quoting <u>Santiago v. Sec'y of Health & Human Servs.</u>, 944 F.2d 1, 7 (1st Cir. 1991). "An ALJ cannot rely on raw medical data; rather, he must look to physician's opinions to translate that evidence into functional terms." <u>Valentín-Rodríguez v. Comm'r of Soc. Sec.</u>, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014). "Where the record is bereft of any medical assessment of residual functional capacity" the First Circuit Court of Appeals "has found a lack of substantial evidence to support a finding that exertional impairments are not disabling, since the ALJ is not qualified to assess residual functional capacity on the basis of bare medical findings." <u>Rodríguez v. Sec'y of Health & Hum. Servs.</u>, 893 F.2d 401, 403 (1st Cir. 1989). Accordingly, "where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." <u>See</u> <u>Pérez</u>, 958 F.2d at 446.

However, when a residual functional capacity assessment has been made by one or more physicians, the ALJ may rely on an RFC assessment made by a physician. <u>Rodríguez</u>, 893 F.2d at 403 ("The ALJ did not impermissibly assess residual functional capacity himself, but instead relied on the residual functional capacity assessment provided by Dr. Lugo."). However, the ALJ need not adopt any single physician's opinion in making an RFC determination and may "piece together the relevant medical facts from the findings and opinions of multiple physicians." <u>Evangelista v. Sec'y of Health & Hum. Servs.</u>, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks—the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case—is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter.").

While no single physician in the record concluded that Plaintiff was limited to a sedentary exertion level, the "piecing together" approach is an appropriate tactic which the ALJ used in this case to arrive at Plaintiff's sedentary exertional level. The ALJ first took into account the treatment notes of Plaintiff's treating physicians, including internist Dr. Lucy Ortiz Alvarado ("Dr. Ortiz Alvarado") who treated Plaintiff in 2017, and endocrinologist Dr. Edgar Torres García ("Dr. Torres") who treated Plaintiff in 2018 and 2019. Tr. 28, 530, 744. Dr. Ortiz Alvarado and Dr. Torres generally reported that Plaintiff had little to no exertional limitations. In 2017, Dr. Ortiz Alvarado reported that Plaintiff had said he was "feeling well," had "no complaints" regarding his musculoskeletal system, and that Plaintiff's neck was "supple, with a full range of motion." Tr. 527, 530, 537, 543. Dr. Ortiz Alvarado also reported that Plaintiff persistently exhibited "elevated glucose levels" and was not "administering . . . insulin as instructed" or following his recommended diet, and that Plaintiff had symptoms of neuropathy. Tr. 531, 532, 538. In 2018, Dr. Torres reported that Plaintiff had complained of "leg numbness, leg paresthesias since months ago." Tr. 744, 747, 800. In terms of functional limitations, Dr. Torres' physical examinations in 2018 reported that Plaintiff had a normal motor strength in his upper and lower extremities, a regular heart rate, and a full range of motion in his neck. Tr. 744, 748. The ALJ also considered that in 2017, Plaintiff underwent treatment at the Instituto Fisiatrico del Caribe where Dr. Eric Ramírez Díaz (Dr. Ramírez) noted Plaintiff's complaints of numbness, weakness, tingling sensation, easy fatigue . . . and heaviness of [the] lower extremities" and observed tenderness upon palpitation of Plaintiff's legs and swelling of Plaintiff's lower extremities. Tr. 887.

Plaintiff complained of more serious limitations to his treating Rheumatologist Dr. Amarilis Pérez De Jesús ("Dr. Pérez De Jesús") during his visits in 2018 and 2019. Tr. 893.

Plaintiff told Dr. Pérez De Jesús that he was experiencing pain in both shoulders, the lower back, and had difficulty elevating his arm. Tr. 890–93. Dr. Pérez De Jesús also found that Plaintiff experienced bilateral shoulder pain, "painful back flexion" with tenderness and stiffness, and she recommended physical therapy. Tr. 890–93.

The ALJ also drew on the opinions of consultative examiners Dr. Zaida Boria ("Dr. Boria") and Dr. David Blas Boria ("Dr. Blas") who examined Plaintiff in August 2017 and June 2018 respectively. Tr. 710, 714; 733, 739. Dr. Boria and Dr. Blas assessed that Plaintiff had a normal gait, had 5/5 strength in both of his lower extremities, had no pain, tenderness, or swelling in his joints, had 5/5 muscular strength in both hands, and was able to grip, grasp, pinch, tap his fingers, button a shirt, pick up a coin, and write. Tr. 715–16; 737–38. Both Dr. Boria and Dr. Blas concluded that Plaintiff is able to "sit, stand, walk, and travel" and that he "can handle and lift common objects." Tr. 714, 736. Nevertheless, the ALJ reasoned that he found Dr. Boria and Dr. Blas' opinions "less persuasive" because "the record as a whole" showed that Plaintiff had greater limitations in sitting, standing, walking, lifting, and handling common objects. Tr. 29.

The ALJ also cited to the opinions of state agency consultants Dr. Pedro Nieves ("Dr. Nieves") and Dr. Cristina Ortiz ("Dr. Ortiz"). Tr. 30. Both of the state agency consultants opined in their "Physical Residual Functional Capacity Assessment" that Plaintiff is able to occasionally lift 20 pounds and 10 pounds frequently, is able to stand, walk, or sit for 6 hours in an 8-hour workday, and is unlimited in his ability to push and pull. Tr. 258, 275. Accordingly, the ALJ concluded that Dr. Nieves and Dr. Ortiz opined that Plaintiff was limited to the "light exertional level" as defined under 20 C.F.R. § 404.1567(b). Tr. 30.[1] The ALJ, however, also

---

[1] The "light work" exertional level "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

found the opinions of Dr. Nieves and Dr. Ortiz "less persuasive" because they only reviewed Plaintiff's medical record as of June 29, 2018 and February 22, 2019, respectively. Tr. 30.

The ALJ cited the opinion of consultative examiner Dr. Yarelis Pérez Rivera ("Dr. Pérez Rivera") who examined Plaintiff in April of 2019. Tr. 771. While concluding that Plaintiff did not have a "limitation when walking" Dr. Pérez Rivera nevertheless opined that Plaintiff was "limited moderately to severely when completing daily activities due to chronic pain in the area of shoulders" and at that moment showed "limitation in range of movement in [his] shoulders[.]" Tr. 190, 777.

In sum, the only Residual Functional Capacity Assessment conducted by a physician with regard to Plaintiff were those conducted by Dr. Nieves and Dr. Ortiz, which concluded that Plaintiff was limited to light work. Nevertheless, the ALJ concluded that Plaintiff was limited to sedentary work, which is even more restricted than light work. Tr. 30. Sedentary work is defined under Social Security regulations as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). In making that finding, it is apparent that the ALJ took into account Plaintiff's complaints and various physician's opinions regarding Plaintiff's leg, shoulder, and back conditions over time to conclude that Plaintiff was even more limited than light work. The ALJ need not have adopted Dr. Nieves' and Dr. Ortiz's opinions regarding Plaintiff's exertional level

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Someone who is able to "do light work . . . can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Id.

and was at liberty to draw on other evidence and opinions in the record when formulating Plaintiff's RFC. Evangelista, 826 F.2d at 144. After all, it is ultimately the ALJ's responsibility to base his RFC determination on all relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. Therefore, it was not improper for the ALJ to piece together an exertional level of "sedentary" after considering the RFC assessment by Dr. Nieves and Dr. Ortiz in light of the other evidence and opinions in the record.

### B.  The ALJ's Mental RFC Determination

Plaintiff next argues with regard to Plaintiff's mental RFC determination that the ALJ failed to consider Plaintiff's non-severe depression when formulating Plaintiff's exertional limitations. ECF No. 14 at 11. Step two of the sequential evaluation process requires that the ALJ determine whether the claimant has any severe impairment before proceeding to the subsequent steps. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824–25 (11th Cir. 2010). Even if the ALJ erroneously found that some of the claimant's impairments are non-severe at step two, the error is harmless if the ALJ continues the sequential analysis and considers both the claimant's severe and non-severe impairments when formulating the RFC. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir.2007); Mason v. Astrue, 2013 WL 391173 at *4 (D.N.H. Jan. 30, 2013); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . ."). In this case, the ALJ concluded at step two that Plaintiff's impairment of major depressive disorder did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities, and therefore was a "non-severe impairment." Tr. 24–25. Plaintiff

asserts that the ALJ nevertheless erred when he failed to mention or to consider Plaintiff's major depressive disorder when formulating the RFC. ECF No. 14 at 11–12.

In <u>Smith v. Saul</u>, 2019 WL 5957294, at *4 (D.N.H. Nov. 13, 2019) (citing <u>Lavoie v. Colvin</u>, 2016 WL 3554963, at *3 (D.N.H. June 24, 2016)), the United States District Court for the District of New Hampshire concluded that the ALJ erred when formulating the RFC because in the ALJ's opinion Plaintiff's non-severe impairments of migraines, Chiari malformation, and anxiety were not mentioned in the RFC analysis. This was error because the ALJ "must provide adequate explanation to show that he considered the combined effect of the impairments as to allow proper judicial review." <u>Id.</u> (internal quotations omitted). The court in <u>Smith</u> further noted that the ALJ's boilerplate assertion that he "considered all of the claimant's impairments in combination" without including all of the Plaintiff's impairments in the analysis, severe and non-severe, was insufficient and merited remand. <u>Smith</u>, 2019 WL 5957294, at *4–5.

The ALJ's mental RFC determination in this case suffers from the same deficiency. Although the ALJ concluded at step two that Plaintiff suffers from the non-severe impairment of major depressive disorder, no mention is made of Plaintiff's depression in the ALJ's RFC analysis. In fact, the ALJ's entire RFC discussion only focuses on Plaintiff's physical impairments and contains no analysis whatsoever of Plaintiff's mental RFC. Tr. 26–31. The ALJ was required under 20 C.F.R. § 404.1545(a)(2) to consider all of Plaintiff's impairments whether severe or non-severe in order to determine their combined effect on Plaintiff's RFC. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . ."). Furthermore, the ALJ's boilerplate assertion that "I considered all of the [Plaintiff's] medically determinable impairments, including those that are not severe impairments, when assessing the

claimant's residual functional capacity" is insufficient to remedy the error. Tr. 25. By failing to analyze Plaintiff's non-severe depression in the RFC determination, the ALJ committed error which merits remand in order for the ALJ to properly account for the combined effect which Plaintiff's major depression may have had on his RFC.[2]

## IV.   CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner regarding Plaintiff's RFC was not based on substantial evidence because it does not state that Plaintiff's non-severe depression was taken into account for purposes of the RFC determination. Therefore, the Commissioner's decision is VACATED and the case REMANDED so that the ALJ may, *inter alia*, fully consider the evidence regarding Plaintiff's medically determinable impairments, both severe and non-severe, when making the RFC determination.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th of January, 2023.

s/Marcos E. López
U.S. Magistrate Judge

---

[2] Plaintiff argues in the alternative that, with regard to both Plaintiff's physical and mental RFC determination, the ALJ failed to adequately develop the record and should have held a "supplemental hearing" before his RFC determination could be supported by substantial evidence. ECF No. 14 at 12. However, because the court concludes that the ALJ's failure to consider Plaintiff's major depressive disorder when formulating the RFC constitutes error which merits a remand, the court need not reach Plaintiff's alternative argument.